IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN B. KLOCK,

      Plaintiff,

vs.                                             Civ. No. 06-248 MV/RHS

Michael J. Astrue,
Commissioner of Social Security,

      Defendant.

UNITED STATES MAGISTRATE JUDGE'S
ANALYSIS AND RECOMMENDED DISPOSITION[1]

      Plaintiff seeks judicial review of the final decision of the defendant, Commissioner of Social Security Administration, pursuant to 42 U.S.C. § 405(g). The challenged decision concerns the applicability of a Government Pension Offset to widower's insurance benefits for which the Plaintiff would otherwise be qualified. The Commissioner determined that Plaintiff's receipt of a municipal government pension fully offset his widower's Social Security benefits, and that equitable estoppel did not prevent the application of the offset provision. This case has been referred to the undersigned. For the reasons discussed below, the undersigned recommends that the District Court deny Plaintiff's Motion and affirm the Commissioner's decision.

I.      **Standard of Review**

      Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's review is limited to two inquiries: first, whether the decision was supported by substantial

---

[1]Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir.1997) (citation omitted). The term substantial evidence has been interpreted by the U.S. Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971) (<u>quoting</u> <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir.1991). Nevertheless, the court must review the record as a whole, and "the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488, 71 S.Ct. 456,(1951); <u>see</u> <u>also</u> <u>Casias</u>, 933 F.2d at 800-01.

## II.    Widower's benefits and the Government Pension Offset.

The Social Security Act provides benefits for several classes of individuals, including husbands and widowers claiming benefits based upon the earnings history of a wife. §42 U.S.C. §402(f). Prior to 1977 husbands and widowers had to demonstrate that they were dependent on their deceased wives to receive benefits, while widows did not.  The Supreme Court held this gender based dependancy requirement unconstitutional in <u>Califano v. Goldfarb</u>, 430 U.S. 199 (1977), and the requirement was repealed by Congress. <u>*See*</u> Social Security Amendment of 1977, §334(b)(1),(d)(1), Publ. L. No. 95-216, 92 Stat. 1509, 42 U.S.C. §402(c)(1), (f)(1) (Supp. V).   The Congress determined, however

> . . .that elimination of the dependency test, by increasing the number of individuals entitled to spousal benefits, could create a serious fiscal problem for the Social Security trust fund. See S.Rep. No. 95-572, supra, at 27-28. This problem was particularly acute with respect to the large number of retired federal and state employees who would now become eligible for spousal benefits. Unlike most

2

applicants, who must offset any dual Social Security benefits against each other, 42 U.S.C. § 402(k)(3)(A), retired civil servants could, at the time of the 1977 Amendments, receive the full amount of both the spousal benefits and the government pensions to which they were entitled. Congress estimated that payment of unreduced spousal benefits to such individuals could cost the system an estimated $190 million in 1979. S.Rep. No. 95-572, supra, at 27-28.

Heckler v. Mathews, 465 U.S. 728, 732 (1984).

Congress enacted the Government Pension Offset provision ("GPO" herein) in 1977 to avoid this fiscal drain.   The GPO provides that benefits due a qualified  widower are subject to an offset of "two-thirds of the amount of any monthly periodic benefit payable to the widower . . . for such month which is based upon his earnings while in the service of the Federal Government or any State or political subdivision thereof . . ." 42 U.S.C. §402(f)(2)(A).[2]  Congress exempted  from the GPO "spouses who were eligible to receive pension benefits prior to December 1982 and who would have qualified for unreduced spousal benefits under the Act  'as it was in effect and being administered in January 1977.'" Heckler v. Mathews, 465 U.S. Id. at 733 (citation omitted).   In January 1977, men were eligible for benefits only upon a showing of dependency.   Accordingly, the GPO provision applies to a widower unless he can show that he was dependent upon his wife for one-half of his support. Id. at 742-743; 20 C.F.R. §408a (b)(2).

## III.  Background

Plaintiff retired from the City of Detroit in November 1975 and began receiving a duty disability retirement allowance ("pension" herein) the following February. (Tr. 92-93, 189).  Plaintiff married Linda Klock on January 12, 1984.  (Tr. 56).  Linda died in July, 1997.  (Tr. 21, 55).  Prior

---

[2]This section was amended by Public Law 108-203, effective March 2, 2004, and is now found at 42 U.S.C. 402(k)(5)(A).

to her death, Plaintiff and Linda had been equal partners in a law practice. (Tr. 164, 166).[3]

Plaintiff contacted the Social Security Administration following Linda's death to inquire about benefits. His inquiry was answered in a letter dated December 15, 1998 by Frank R. Mirgeler, Jr., operations supervisor for the Social Security Office in Tempe Arizona. (Tr. 31-32). Mr. Mirgeler's letter discussed what benefits would be available to Plaintiff in his own right and as Linda's surviving spouse. The letter indicates that Mr. Mirgeler reviewed all earnings posted to Plaintiff's account, but does not mention any GPO based on receipt of Plaintiff's municipal pension. The record of earnings reviewed by Mr. Mirgeler in 1998 is not in the administrative record. However, an earnings record generated on December 21, 2001, lists retirement benefits paid to Plaintiff by the City of Detroit from 1978 through 1990, with no pension payments noted thereafter. (Tr. 37-39). Plaintiff maintains that he advised Mr. Mirgeler of his service with the Detroit Police Department and of the pension he was receiving. (Tr. 54, 168, 190).

Plaintiff began winding up his law practice in the Spring of 1999, and closed it in the Spring of 2000. (Tr. 169, 191). His application for widower's benefits was protectively filed on July 24, 2001, three months prior to his 60th birthday. (Tr. 18, 55-57, 60). At that time, his pension from the City of Detroit was between $27,273 and $28,800 per year. (Compare Tr. 53, 56 with Tr. 58). Although the amount of Plaintiff's pension benefit for the year prior to Linda's death is not reflected in the Administrative Record, the record does contain a history of the pension payments for 1975,

---

[3]Records of earnings maintained by the Social Security Administration indicate identical earnings for Plaintiff and Linda Klock for the years 1993-1996. In 1996, Plaintiff and Linda Klock had reported earnings of $21,790 each. In 1997, Plaintiff had reported earnings of $35,440.00. No earnings were reported for Linda Klock in 1997. (Tr. 44, 47).

1978-1990 and 2001.[4]  There was a drop in the amount of the pension in 1989 due to conversion of

Plaintiff's pension to Reduction Duty Disability, effective November 18, 1988. (Tr. 94, 162).  Except

for this one time conversion, Plaintiff's pension benefits have increased every year.

Plaintiff's application for widower's benefits was approved on May 18, 2002; however, the

amount of the benefit was reduced to zero by application of the GPO.  If the GPO had not been

applied, Plaintiff would have been entitled to a monthly widower's benefit of $1,045.30 commencing

October 2001.  (Tr. 70).

Plaintiff sought review by an Administrative Law Judge ("ALJ" herein).  The ALJ determined

that Plaintiff  had failed to show that he was dependent on Linda  for one-half of his support, and that

the Social Security Administration had correctly calculated the amount of his Widower's benefits

considering his receipt of a government pension.  (Tr. 106).

The Appeals Council granted Plaintiff's request for review and remanded, directing the ALJ

to correct certain procedural errors[5].  The Appeals Council further stated:

> [A]lthough the Council agrees with the Administrative Law Judge's conclusion that
> the one-half support requirement was not met, further rationale, using specific
> amounts of income of the claimant and wage earner and applying the provisions of
> Social Security Ruling 89-1c, is required to support such a finding.  In considering the
> issue of equitable estoppel, the Administrative Law Judge will make a finding as to

---

[4]The record indicates the receipt of pension benefits in the following amounts:  **1975** - $1,175.01 per mo (Tr. 92); **1978** $15,582.60 per year (Tr. 37-38); **1979** $15,582.60 (Tr. 38); **1980** $25,808.91 per year (Tr. 38); **1981** $21,387.96 per year (Tr. 38); **1982** $5,799.42 per year (Tr. 38); **1983** $20,912.67 per year (Tr. 38); **1984** $15,884 per year (Tr. 38); **1985** $17,982 per year (Tr. 38); **1986**-$23,493 per year (Tr. 38-39); **1987**-$25,284.76 per year (Tr. 39); **1988**- $25,284.76 + $6,333.48 per year (Tr. 39); **1989** $18,956 per year (Tr. 39) ; **1990** $20,810 per year (Tr. 39); **2001** - $27,273.12 per year (Tr. 58).

[5]The Appeals Council believed the following "procedural errors" needed to be addressed:  exhibits entered into the record without affording Plaintiff opportunity to review or comment upon them; failure to subpoena Plaintiff's accountant once ALJ determined the accountant's affidavit insufficient to find the one-half support requirement met; the ALJ's failure to make a finding regarding Plaintiff's claim of equitable estoppel based on the Mirgeler letter (TR. 113).

whether or not the claimant received misinformation, which depends on whether the claimant had fully disclosed to the Operations Supervisor who prepared the notice to him that he as receiving a government pension.  The Administrative Law Judge may wish to request the assistance of the local Social Security office to obtain a statement from that employee as to his recollection of the events and his awareness of the GPO (government pension offset) provisions.  If it is found that the claimant did receive misinformation, the Administrative Law Judge will then consider the provisions of Social Security Ruling 70-19c in determining whether equitable estoppel applies.

(Tr. 113-114).

Social Security Ruling 89-1c contains the text of <u>Drombetta v. Secretary of Health & Human Services</u>, 845 F.2d 607 (6th Cir. 1987), and is discussed <u>infra</u>.

At a second administrative hearing, the ALJ stated that Mr. Mirgeler was no longer employed by the Social Security Administration, and that he had been unable to locate him.  The ALJ offered to postpone the hearing so that Plaintiff could attempt to locate Mr. Mirgeler.  Plaintiff elected to proceed with the hearing, stating that he would attempt to locate Mr. Mirgeler.  (Tr. 175).  Plaintiff then presented testimony from his accountant, Mr. Vello, who testified that based on personal knowledge and expertise that Plaintiff and Linda Klock pooled their income into one bank account (Tr. 178); that he was not positive as to whether Plaintiff's pension income was placed in a joint account (Tr. 180-181); that under Arizona community property laws, all of Plaintiff's income, including his pension, would be split 50-50 between Plaintiff and Linda Klock (Tr. 181-182); that Plaintiff met the one-half support test, because half of his pension would be considered the property of Linda Klock; that prior to her death, Linda Klock had approximately $1,500.00 of annual income, which he assumed stemmed from her sole and separate property[6], and that this income constituted

---

[6]Plaintiff testified that this income was derived from the investments funded by proceeds of the sale of a home owned by Linda Klock, which investments she maintained in her name until her death.  (Tr. 186-187).

"outside income" she shared with Plaintiff  (Tr. 184); and that Plaintiff's pension income would or could be considered outside income (e.g., income equally shared by both spouses)  (Tr. 184-185).

The ALJ issued a decision on  April 4, 2005. He found that Plaintiff did not receive half of his support from Linda, and that his Widower's benefits were properly reduced to zero due to receipt of his government pension.   The ALJ did not cite to specific amounts of income for Plaintiff and Linda in discussion of the half-support test.   In the body of his decision, the ALJ stated that the evidence was insufficient to support a finding Mr. Mirgeler was aware of Plaintiff's receipt of a government pension, therefor he could not find that the letter contained misinformation.  He further stated that given the time and opportunity Plaintiff had to clarify his benefit options, principles of equitable estoppel did not apply.  (Tr. 16-22).   The Appeals Council denied Plaintiff's request for review, thus the ALJ's decision is the final decision of the Commissioner of Social Security. See 42 U.S.C. § 405(g), § 1383(c)(3).

**V.**     **Analysis**

      A.      Half-Support Test

The Social Security Act provides for benefits to widowers of fully insured individuals, provided specified criteria are met.  42 U.S.C. §402(f).  It is undisputed that Plaintiff meets all the qualifying criteria for receipt of widower's benefits.  At issue is whether Plaintiff's benefits are reduced "by an amount equal to two-thirds of the amount" of his government pension.  42 U.S.C. §402(f)(2)(A), see also 20 C.F.R. §408a(a).  This reduction must be made unless Plaintiff meets an exception delineated in 20  C.F.R. §404.408a(a).  Plaintiff asserts that he is entitled to an exception to the GPO provision because he was dependent on Linda for one-half of his support at the time of her death.  20 C.F.R. §404a(b)(2).  In making this assertion, Plaintiff misapprehends what "half-

support" is, assuming that anyone whose spouse contributes one-half or more to the total household income meets the requirements under that test.  It is not so simple.

The "pooled fund" method set out in POMS §RS 01301.200 was used in determining whether Plaintiff meets the one-half support test.  This method creates a rebuttable presumption that all income coming into a household is pooled for the support of the household and that each member of the household shares equally in the funds used for support.

> . . . In application, the income of the household members . . .(is) added together to compute the household income.  The household income (is) divided by the number of household members, two in this case, to determine the amount for support of each member.  To determine half-support (Plaintiff's) support amount (is) divided by two. POMS 01310.220, 01310.190.  The half-support test (is) met if (Plaintiff's) half-support amount (is) greater than (his) own earnings.

Drombetta v. Sec'y of Health & Human Services, 845 F.2d 607, 609 (6th Cir. 1987).

POMS (The Program Operations Manual System) is a policy and procedural manual used by employees of the Social Security Administration to evaluate social security claims.  It does not have the force of law, but is a persuasive interpretation by the Commissioner of Social Security of binding statutory and regulatory law, and is to be given a high degree of deference by courts reviewing the agency's interpretation of a statute or regulation it administers.    Sherrill v. Barnhart, 2006 WL 4050693, *4 (D. Kan. Oct. 18, 2006) (slip opinion).  The Agency's interpretation  as set out in POMS is to be given controlling weight unless it is plainly erroneous or inconsistent with the regulations.  McNamar v. Apfel, 172 F.3d 764, 766-767 (10th Cir. 1999).

POMS RS01310.200 includes definitions or examples of "outside" income, which is included in income shared by family members, and "non-examples," which are types of income not to be so included.  One  such "non-example" is income from pensions.  The court does not reach the issue of

whether or not exclusion of pension income from "outside" income is erroneous or inconsistent with the Social Security Administrations regulations, because even if Plaintiff's pension is treated as "outside" income, Plaintiff does not meet the one-half support test.

There is substantial evidence that Plaintiff's pension in 1996 and 1997 was more than the amount payable in 1988, and less than the amount payable in 2001. There is substantial evidence that Plaintiff's household income in 1996, the year prior to Linda's death, was between $64,045.64[7] and $73,880.00[8]. Applying the pooled fund method, and including Plaintiff's pension in the pooled fund, Plaintiff's half-support amount is between $16,011.42[9] and $18,470.00.[10] The half-support test is not met because Plaintiff's half-support amount under either scenario is not greater than earnings attributed solely to his share of his law practice of $21,790.00. (See footnote 3, supra).

## B.    Equitable Estoppel and Contract Claims

Plaintiff contends that his good faith reliance on the letter from Mr. Mirgeler precludes the application of the GPO to reduce his widower's benefits. He asserts that the ALJ committed error by not issuing a subpoena for Mr. Mirgeler and further contends that he has a contractual right to receipt of widower's benefits.

Turning first to the ALJ's failure to subpoena Mr. Mirgeler, the ALJ advised Plaintiff that he

---

[7] Annual earnings of $21,790 attributed to each spouse, plus Linda's separate annual income of $1,500, plus Plaintiff's pension rate effective 11/18/88 of $1,580.47 per month.

[8] Annual earnings of $21,790 attributed to each spouse, plus Linda's separate annual income of $1,500, plus Plaintiff's 2001 pension of $2,400 per month.

[9] $64,045.64 (total household income) divided by 2 (number of members in household) = $32,022.81 (amount of support for each other) divided by 2 = $16,011.42 (the one-half support amount).

[10] $73,880.00 (total household income) divided by 2 (number of members in household) = $36,940 (amount of support for each other) divided by 2 = $18,470 (the one-half support amount).

had not been able to locate Mr. Mirgeler, and offered Plaintiff additional time to attempt to locate him.  Plaintiff declined the offer to postpone his hearing.[11]

The burden of asserting estoppel against the government is a heavy one. Jones v. Department of Health and Human Servs., 843 F.2d 851, 853 (5th Cir.1988).  All courts have a duty to observe conditions defined by Congress for charging the public treasury.  Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 385, 68 S.Ct. 1, 3 (1947).  The United States Supreme Court has refused to estop the government from denying Social Security benefits to a person who was erroneously told by an employee of the Social Security Administration that she was not eligible for benefits and who, in reliance, did not file the required application. Schweiker v. Hansen, 450 U.S. 785, 790, 101 S.Ct. 1468, 1471-72 (1981). The Court held that "these errors 'fall short' of conduct which would raise a serious question whether petitioner is estopped from insisting upon compliance with the valid regulation." Id. at 790, 101 S.Ct. at 1472.  See also Office of Personnel Management v. Richmond, 496 U.S. 414, 426 110 S.Ct. 2465, 2472 (1990). (The doctrine of equitable estoppel cannot grant respondent a money remedy that Congress has not authorized.).  The same result is mandated here. Any mistake by Mr. Mirgeler, either because he was misinformed or failed to become informed regarding Plaintiff's receipt of a government pension is not such conduct which would excuse compliance with the valid provision of the Government Pension Offset.

The Social Security Act specifically provides that the GPO applies to reduce widower's

---

[11] There is no evidence in the Administrative Record that Mr. Mirgeler was available.  Plaintiff represented to the Appeals Council that Mr. Mirgeler was living locally, and could be reached with a phone call (Tr. 143).  There is no independent confirmation of this.  Plaintiff stated at the administrative hearing that he would attempt to locate Mr. Mirgeler.  (Tr. 175).  There is no indication that Plaintiff ever informed the ALJ of Mr. Mirgeler's address, or requested a subpoena for Mr. Mirgeler between the date of the Administrative Hearing on January 27, 2005 and the ALJ's decision on April 4, 2005.

benefits unless the claimant for such benefits was eligible to receive pension benefits prior to December 1982 and can show dependency upon his deceased spouse in the year prior to her death. Heckler v. Mathews, 465 U.S. Id. at 733 (citation omitted). Because Plaintiff does not meet the half-support test of dependency, the government is not estopped from applying the GPO to reduce Plaintiff's widower's benefits.

C.      Contract

Finally, Plaintiff's argument that he has a contractual right to receipt of widower's benefits must be rejected. There is no contractual right to such benefits. Flemming v. Nestor, 363 U.S. 603, 609-610, 80 S.Ct. 1367 (1960).

VI.   Recommended Disposition

For the reasons stated herein, I recommend that Plaintiff's Motion to Reverse or Remand be denied, and that the decision of the Commissioner that the Government Pension Offset applies, and reduces Plaintiff's widower's benefits to zero be affirmed.


                                        ROBERT HAYES SCOTT
                                        UNITED STATES MAGISTRATE JUDGE